JASON M. FRIERSON
United States Attorney
District of Nevada
Nevada Bar Number 7709
Lauren M. Ibanez
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
Lauren.Ibanez@usdoj.gov
*Representing the United States of America*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JERMAINE RICHARDSON,<br><br>Defendant, | Case No. 2:24-mj-420-BNW<br><br>**COMPLAINT**<br><br><u>VIOLATIONS</u>:<br><br><u>Count One</u>:<br>18 U.S.C. §§ 922(o) and 924(a)(2) – Unlawful Transfer or Possession of a Machinegun |

BEFORE the United States magistrate Judge, Las Vegas, Nevada, the undersigned Complainant, being duly sworn, deposes and states:

<u>**COUNT ONE**</u>
*Unlawful Possession or Transfer of a Machinegun*
(18 U.S.C. §§ 922(o) and 924(a)(2))

On 19 April 2024, in the State and Federal District of Nevada,

**JERMAINE RICHARDSON**

defendant herein, did knowingly possess and carry a Glock, 27Gen4, .40 cal. pistol, Serial No. BGHN757 equipped with a Machinegun Conversion Device (MCD) used to modify a semi-automatic firearm to fire as a fully automatic weapon, thereby enabling it to expel multiple

1

projectiles (i.e., "bullets"), without manual reloading, by a single function of the trigger, in violation of Title 18 United States Code, Sections 922(o) and 924(a)(2).

## PROBABLE CAUSE AFFIDAVIT

I, Michael LaRusso, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, states the following as and for probable cause:

1. Your Affiant is a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), a component of the United States Department of Justice, and have been so employed since October 2009. Your Affiant is currently assigned to the ATF Las Vegas Field Office. Your Affiant has successfully completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center and Special Agent Basic Training at the ATF National Academy. The training received at the academy included education and experience on various topics including formalized instruction in, among other things: firearms, controlled substances, violent crime-related investigations, United States firearms laws, physical and electronic surveillance, weapon qualification and tactics, operation and use of confidential sources, and undercover operations.

2. As an ATF Special Agent, Your Affiant has conducted and participated in both state and federal investigations involving the illegal possession and trafficking of firearms. During these investigations, Your Affiant has participated in and/or served as the primary case agent in cases involving various types of investigative techniques, including the use of electronic surveillance, assistance from undercover agents and informants, and the controlled purchases of firearms and narcotics from suspects. Your Affiant has also conducted physical surveillance operations and have experience in recognizing tactics employed by targets of investigations to thwart law enforcement surveillance. Your Affiant has executed numerous federal arrest warrants and search warrants, resulting in the successful prosecution of defendants.

3.       Additionally, Your Affiant has authored numerous search warrants for residences, vehicles, electronic devices, tracking devices, and social media accounts. Because of Your Affiant's training and experience, Your Affiant is familiar with the manner in which illegal firearm traffickers smuggle, transport, store, conceal, and distribute firearms and controlled substances. Your Affiant is also familiar with the way these individuals use telephones, coded communications, false or fictitious identities, and other means to facilitate illegal activities and thwart law enforcement investigations. Your Affiant has also consulted and discussed these investigations with other law enforcement officers and agents who are experienced in these types of investigations.

4.       The following information contained within this criminal complaint is based upon Your Affiant's participation in this investigation as well as information and reports provided to me by other law enforcement personnel. This statement does not include all information in reference to this investigation, but rather only those facts necessary to establish probable cause. All times are approximate.

## FACTS ESTABLISHING PROBABLE CAUSE

5.       On 19 April 2024, at approximately 1550 hours, North Las Vegas Police Department (NLVPD) Officer C. Colwell (#2459) and Officer R. Ramirez (#2514), assigned to the Las Vegas Metropolitan Police Department (LVMPD) Central Intelligence Unit (CIU) Task Force, were conducting covert surveillance in the area of Sun Avenue and Bulloch Street in relation to recently provided information obtained from a source reference J.A.N.K.Y. gang members frequenting the area while illegally possessing firearms. The acronym "J.A.N.K.Y." means "Just Another N***a Killing Youngsters." While conducting covert surveillance, Officers Colwell and Ramirez observed a black male adult, who officers immediately recognized as being JERMAINE RICHARDSON (hereinafter, "RICHARDSON"), exit an

apartment located at 2025 Sun Ave., #202, North Las Vegas, NV 89030. RICHARDSON was wearing grey NIKE sweatpants and a green hoodie with the words "fake love" displayed across the chest in white lettering. It should be noted that, at the time, officers notated the weather to be approximately eighty-eight degrees, obtained from a cell phone weather application.

6. Officer Colwell informed Officer Ramirez that a recent criminal records check on RICHARDSON returned results showing three active arrest warrants referencing charges for Battery with a Deadly Weapon with Substantial Bodily Harm, Child Abuse/Neglect, Domestic Battery, Assault/Domestic Violence with Use of a Deadly Weapon. Officer Colwell further advised Officer Ramirez that RICHARDSON did not possess a Concealed Carry Weapons (CCW) permit.

7. During the covert surveillance, officers witnessed RICHARDSON with his left hand inside of his hoodie pocket, which appeared to be weighed down by a heavy object. RICHARDSON's right hand was observed to be holding a cellular telephone. RICHARDSON proceeded to walk northbound across Sun Avenue, and subsequently eastbound on Sun Avenue towards a dark colored Sport Utility Vehicle (SUV) that was parked facing westbound. RICHARDSON stood at the driver side window of the SUV and conversed with the driver.

8. Officers Colwell and Ramirez witnessed RICHARDSON pull a clear plastic baggie from his hoodie pocket, which they immediately recognized the contents in the baggie to be a green leafy substance consistent with marijuana. RICHARDSON handed the baggie to the driver of the SUV. The driver of the SUV then handed cash to RICHARDSON, who took the cash and proceeded to retrieve his wallet from his pocket. Upon opening his wallet, RICHARDSON took out the cash that was folded inside of it and began to fan it out. RICHARDSON appeared to be giving change back to the SUV driver.

9. Following the transaction, RICHARDSON proceeded to walk southbound, crossing Sun Avenue and taking the same path back towards the apartment he initially exited. At this time, RICHARDSON had both of his hands outside of his hoodie and the object in his hoodie, near his waist area, was protruding out. Officers identified the object as being a firearm.

10. Officers Colwell and Ramirez determined there to be probable cause to arrest RICHARDSON for his active warrants and for Possession of a Controlled Substance with Intent to Sell.  Officers proceeded to exit their vehicle wearing tactical vests that display "POLICE" in large white block letters on the front and rear. Officers approached RICHARDSON, directing him to show his hands and get down on the ground, to which he immediately complied. While RICHARDSON was going down to the ground, Officer Ramirez could visibly see a black Glock firearm equipped with a silver apparent MCD (aka, "Glock Switch") protruding out of RICHARDSON's hoodie. Officer Colwell advised RICHARDSON to not reach for the firearm, to which RICHARDSON replied he would not.  Officer Colwell subsequently placed RICHARDSON in handcuffs and removed the firearm from RICHARDSON's hoodie pocket.  Once the firearm was removed, Officer Ramirez observed a large extended magazine inside of the Glock pistol, which also had a black du-rag wrapped around the handle.

11. RICHARDSON was taken to the front of the officers' vehicle and searched incident to arrest. Officer Colwell did not find any additional weapons but did locate cash in different denominations from RICHARDSON's wallet, separated into seven (7) one dollar bills, one (1) five dollar bill, and seven (7) twenty dollar bills, for a total of one hundred fifty-two dollars.  Officer Ramirez notated it to be common for drug dealers to possess different denominations of cash on their person due to both receiving money from their illicit drug sales, as well as making change for larger bills received.

12. Officers further recovered two (2) debit cards in RICHARDSON's wallet, neither of which were in RICHARDSON's name. RICHARDSON advised these debit cards belonged to his girlfriend, Rori Sims.

13. The firearm recovered from RICHARDSON's person was further identified as being a Glock, 27Gen4, .40 cal. pistol, Serial No. BGHN757, equipped with a silver MCD and extended magazine. An MCD is used to modify a semi-automatic firearm to fire as a fully automatic weapon, thereby enabling it to expel multiple projectiles (i.e., "bullets"), without manual reloading, by a single function of the trigger.

14. Officer Ramirez removed the extended magazine from the aforementioned pistol and racked the slide back, which revealed a live ammunition cartridge inside of the chamber. In total, twenty-seven (27) live hollow point ammunition cartridges were recovered from the firearm. A records check of the firearm serial number returned results showing it not to have been reported stolen.

15. It should be noted that both Officer Colwell and Officer Ramirez know RICHARDSON to be a J.A.N.K.Y. Gang member. Through their training and experience, as well as reviewing numerous open-source social media videos and photographs, Officers Colwell and Ramirez know it is highly common for gang members to possess firearms equipped with MCDs and high-capacity magazines to protect themselves from other gang members and to utilize in shootings. Officer Ramirez notated it is common for gang members to have "Hooping" sessions, wherein rival gangs will share their locations with each other for the purpose of exchanging a shootout. Officer Ramirez further noted the area in which RICHARDSON was arrested is commonly referred to as the "Hoods," in reference to it being the primary location occupied by the Blood gang known as the "004 Hoodsmen," a rival gang of the J.A.N.K.Y. Gang.

16. RICHARDSON was arrested for Possession of a Machinegun, Possession of Devices or Parts that Modify a Semi-automatic Firearm, Carrying a Concealed Weapon without a Permit, Possession of a Controlled Substance with Intent to Sell, and Using a Firearm to Engage in Relation to Drug-related charges. RICHARDSON was subsequently transported to the North Las Vegas Community Correctional Center. The Glock pistol and ammunition were seized and impounded at the NLVPD South Area Command. The one hundred fifty-two dollars was seized as evidence of drug sales and impounded at the NLVPD South Area Command. RICHARDSON's cellular telephone was seized for the purpose of applying for and conducting a search warrant.

## CONCLUSION

17. Based upon the information set forth in this application, your Affiant respectfully submits that there is probable cause to believe that Jermaine Richardson committed the offenses of 18 U.S.C. § 922(o), *Illegal Possession or Transfer of a Machinegun*.

_____
Michael LaRusso, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on _3_ day of May, 2024.

_____
HONORABLE BRENDA N. WEKSLER
UNITED STATES MAGISTRATE JUDGE